# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 12

State of North Dakota,                                    Plaintiff and Appellee

   v.

Kyle Woodman,                                         Defendant and Appellant

## No. 20240037

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable James D. Gion, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Amanda R. Engelstad, State's Attorney, Dickinson, ND, for plaintiff and appellee; submitted on brief.

Chad R. McCabe, Bismarck, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]   Kyle Woodman appeals from an amended criminal judgment after a jury convicted him of three counts of gross sexual imposition. He argues the district court committed obvious error by not including in the jury instructions the essential element that the crimes occurred in North Dakota; that the prosecutor committed obvious error by creating evidence by argument, incorporating personal beliefs, and vouching for government witnesses' credibility during closing argument; and that the district court committed obvious error by relying on an impermissible factor to decide the severity of the sentence. We conclude Woodman failed to establish obvious error. We affirm.

I

[¶2]   In April 2022, the State charged Woodman with three counts of gross sexual imposition in Stark County district court. In September 2023, the district court held a jury trial. The jury found Woodman guilty on all three counts.

[¶3]   In January 2024, the district court held a sentencing hearing. The court sentenced Woodman on count one to twenty years in prison with all but five years suspended for ten years, on count two to seven and a half years, and on count three to seven and a half years, with all sentences running consecutive to each other.

II

[¶4]   Woodman concedes the issues he raises on appeal were not raised in the district court. He requests we consider the issues under the obvious error standard of review. *See* N.D.R.Crim.P. 52(b) ("An obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention.").

[¶5]   "To establish an obvious error, the defendant must show: (1) error; (2) that is plain; and (3) the error affects the defendant's substantial rights." *State v.*

*Gardner*, 2023 ND 116, ¶ 5, 992 N.W.2d 535 (quoting *State v. Smith*, 2023 ND 6, ¶ 5, 984 N.W.2d 367). "To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law. There is no obvious error when an applicable rule of law is not clearly established." *Id.* (quoting *State v. Lott*, 2019 ND 18, ¶ 8, 921 N.W.2d 428). "When a defendant proves obvious error occurred, this Court has discretion whether to rectify it and will only do so when the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Watts*, 2024 ND 158, ¶ 7, 10 N.W.3d 563 (internal quotation marks omitted) (quoting *State v. Olander*, 1998 ND 50, ¶ 16, 575 N.W.2d 658). "In analyzing obvious error, our decisions require examination of the entire record and the probable effect of the alleged error in light of all the evidence." *Olander*, at ¶ 12.

III

[¶6] Woodman argues the district court committed obvious error by not including in the final jury instructions the essential element that the crimes occurred in the State of North Dakota.

[¶7] "The district court must instruct the jury on the law; however, the parties must request and object to specific jury instructions." *State v. Hartson*, 2024 ND 78, ¶ 19, 6 N.W.3d 639 (quoting *State v. Jacob*, 2006 ND 246, ¶ 14, 724 N.W.2d 118). "[A] party who objects to an instruction . . . must do so on the record, stating distinctly the matter objected to and the grounds[.]" N.D.R.Crim.P. 30(c)(1). "When a defendant fails to object to a proposed instruction properly, or fails to specifically request an instruction or object to the omission of an instruction, the issue is not adequately preserved for appellate review and our inquiry is limited under N.D.R.Crim.P. 52(b) to whether the jury instructions constitute obvious error affecting substantial rights." *Hartson*, at ¶ 20. "Failing to instruct the jury on all of the essential elements of an offense is a plain error." *Smith*, 2023 ND 6, ¶ 16.

[¶8] North Dakota has legislatively defined the term "element of an offense" to mean:

> a. The forbidden conduct;

b. The attendant circumstances specified in the definition and grading of the offense;
c. The required culpability;
d. Any required result; and
e. The nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue.

N.D.C.C. § 12.1-01-03(1).

[¶9] This Court has not decided whether territorial jurisdiction is an essential element of an offense. Courts differ on this issue. *See* 1 Wayne R. LaFave, *Subst. Crim. L.* § 4.1(b) (3d ed. Oct. 2024 Update) ("At least when the matter has been put into issue by the defendant, whether the prosecuting government actually has criminal jurisdiction over the conduct of the defendant is, under the prevailing view, a matter to be determined by the trier of fact. But there is some authority that the locale of the crime charged 'is merely an issue of the territorial jurisdiction to be decided by the court.'"); *People v. Betts*, 103 P.3d 883, 892 (Cal. 2005) ("Because territorial jurisdiction is a procedural matter that relates to the authority of California courts to adjudicate the case and not to the guilt of the accused or the limit of authorized punishment, a jury trial on the factual questions that establish jurisdiction is not required by the federal Constitution."); *State v. Denofa*, 898 A.2d 523, 533 (N.J. 2006) (explaining "territorial jurisdiction is a non-material element" and "never submitted to the jury unless there is some factual dispute concerning whether the crime occurred in this State"); *cf. Jones v. State*, 915 A.2d 1010, 1018 (Md. Ct. Spec. App. 2007) ("mere possibility" crime did not take place within state not sufficient "to create a genuine factual dispute," and thus where victim of rape both put inside car and later dumped out within state, mere fact it "physically possible" for car in interval between, when rape occurred, to leave state insufficient to create jury question); *State v. Arot*, 2013 ND 182, ¶ 8, 838 N.W.2d 409 (For juvenile court jurisdiction, "the standard of proof denominated as proof beyond a reasonable doubt is inapplicable to waiver of jurisdiction proceedings because it applies in the context of a criminal trial and not to the initial stages of the criminal process[;] . . . [t]he determination is not one of guilt or innocence, requiring a proof beyond a reasonable doubt, but whether the district court has the power to act."). Woodman has not challenged the district court's territorial jurisdiction. We need

not decide today whether territorial jurisdiction is an essential element of an offense when a defendant does not put jurisdiction into issue.

[¶10] The final jury instructions identify the essential elements for the three gross sexual imposition counts. The essential elements for each count include that the State prove, beyond a reasonable doubt, that Woodman willfully engaged in sexual contact with the victim "in Stark County." The essential elements portions of the final instructions do not specifically state "North Dakota." However, the preliminary (opening) jury instructions explain the jury will receive two sets of jury instructions, the preliminary jury instructions and the final jury instructions. The preliminary instructions explain the criminal information charges Woodman "with having committed three counts of the offense of 'Gross Sexual Imposition' in Stark County, North Dakota[.]" The preliminary instructions then identify the alleged forbidden conduct for each count and that the alleged conduct occurred "in Stark County, in the State of North Dakota[.]" The caption of both the preliminary and final instructions include "State of North Dakota" and "County of Stark." Both instructions were also dated and signed by the district court judge "at Dickinson, North Dakota[.]"

[¶11] Jury instructions "are sufficient if, as a whole, they correctly advise the jury of the law, *even if part of the instructions, standing alone, may be erroneous*." *Smith*, 2023 ND 6, ¶ 10 (emphasis added). Here, when read together, the instructions demonstrate the "Stark County" referenced in the essential elements instructions refers to Stark County, North Dakota.

[¶12] We conclude the jury instructions, read together, adequately informed the Stark County jury the charged offenses had to occur in Stark County, North Dakota. Woodman did not establish the first prong of obvious error because he failed to demonstrate the district court's use of the jury instructions constitutes error.

IV

[¶13] Woodman argues the prosecutor committed obvious error by creating evidence by argument, incorporating personal beliefs, and vouching for government witnesses' credibility during closing argument.

4

[¶14] This Court has explained that "prosecutors should not express their personal views on the evidence to the jury. A prosecutor must walk a line between his or her duty to prosecute earnestly while refraining from improper methods calculated to produce a wrongful conviction." *State v. Smith*, 2023 ND 82, ¶ 10, 989 N.W.2d 490. "This can be a gray area and a difficult assessment to make." *Id.* "The trial court must discourage inappropriate argument by the prosecutor by taking prompt action, which may include corrective instructions or an admonition." *Id.*

[¶15] "A district court has discretion to control closing arguments." *State v. Owens*, 2015 ND 68, ¶ 20, 860 N.W.2d 817. "We will not reverse a district court's control of closing argument absent a clear abuse of discretion." *Id.* "If the defendant does not object during closing argument, we will not reverse unless the challenged remarks constitute obvious error affecting a defendant's substantial rights." *Id.*

> Our review is limited to determining if the prosecutor's conduct prejudicially affected the defendant's substantial rights, so as to deprive the defendant of a fair trial. In deciding if there was obvious error, we consider the probable effect of the prosecutor's improper comments on the jury's ability to judge the evidence fairly. Obvious error is noticed only in exceptional circumstances in which the defendant has suffered a serious injustice.

*Smith*, 2023 ND 82, ¶ 9 (quoting *State v. Vondal*, 2011 ND 186, ¶ 12, 803 N.W.2d 578). "Ordinarily, 'inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.'" *State v. Skorick*, 2002 ND 190, ¶ 11, 653 N.W.2d 698 (quoting *State v. Thiel*, 411 N.W.2d 66, 71 (N.D. 1987)).

[¶16] Woodman lists the following comments during the State's closing argument as establishing the requisite obvious error:

- "The forensic interviewers are taught in a very specific way to ask questions of the child, or the minor . . . They are questions that are open ended so the child has the opportunity to tell their story in their own words without any outside influence from an adult . . ."

- "That's good policing. That's what they are taught."
- "They did what they were supposed to do."
- "That's not true."
- "[T]hat's not the way I remember them testifying. What I remember is Detective Gregory saying . . ."
- "There's nothing that has been presented in evidence that has refuted what these girls have said, and I think if you go back and you take a look at the evidence that you have and you remember the testimony, that you will find Mr. Woodman, the Defendant, guilty on all three counts . . ."
- "So the truth is what you heard from the witnesses, from the victims."
- "She's more than qualified to handle these kinds of cases."
- "She doesn't know what to do. She's kind of scared. She's uncomfortable. She doesn't tell anyone. It's not uncommon."
- "Again, she's young. She's scared. She's uncomfortable. She doesn't know what to do."
- "[T]he detective, who, again, is an experienced detective[.]"
- "That is good investigative work."
- "That's not true."
- "He didn't do anything to their credibility."
- "There has been nothing that has been presented to you that would erode these girls' credibility."
- "Their credibility is intact."
- "There has not been a single piece testimony that has refuted anything that these girls have said or eroded their credibility in any way, and I would ask you to remember that when you go back to the deliberation room."
- "I believe if you really look at their testimony and what it took for them to be here[.]"

Woodman argues the "cumulative effect" of the prosecutor's comments create evidence by argument, inject personal beliefs, and vouch for witnesses. Woodman argues reversal and remand for a new trial is warranted.

[¶17] Many of the comments identified by Woodman, when read in context, comment on the evidence and are not objectionable; some of the comments appear to express the prosecutor's personal views on the evidence and may have

6

warranted action by the district court had Woodman objected. However, assuming some of the prosecutor's comments were improper, Woodman has not demonstrated the comments had prejudicial effect. The court instructed the jury it had the duty to weigh the evidence and determine the witnesses' credibility. It also instructed the jury that an attorney's argument or remarks are not evidence, and that if an attorney made any comments or statements concerning the evidence which the jury finds are not supported by the evidence, it should disregard them and rely on its own recollection or observation. "We presume the jury followed the court's instructions." *Steinbach v. State*, 2015 ND 34, ¶ 35, 859 N.W.2d 1. "The court's instructions minimized any prejudice from the prosecutor's improper comments." *Id.*

[¶18] We conclude Woodman has not demonstrated the prosecutor's comments constitute obvious error affecting his substantial rights.

V

[¶19] Woodman argues the district court committed obvious error by relying on an impermissible factor, specifically a pending criminal charge, to decide the severity of the sentence.

[¶20] "This Court's review of a sentence is generally confined to whether the district court acted within the statutory sentencing limits or substantially relied on an impermissible factor." *State v. Aune*, 2021 ND 7, ¶ 10, 953 N.W.2d 601. "A trial judge is allowed the widest range of discretion in determining the appropriate criminal sentence." *Id.* "This Court has no power to review the discretion of the sentencing court when the term of imprisonment is within the range authorized by statute." *Id.*

[¶21] "Criminal history is a factor that a trial judge should consider to determine the proper sentence." *Aune*, 2021 ND 7, ¶ 16. However, "a sentencing court may not rely upon an impermissible factor to determine the severity of the sentence, such as a pending criminal charge[.]" *State v. Hoverson*, 2006 ND 49, ¶ 35, 710 N.W.2d 890. If a sentencing court improperly considers a pending charge, "[t]he sentence will be set aside only where there is a showing that the trial judge *substantially relied upon the impermissible factor* in determining the severity of the

7

sentence to be imposed." *State v. Smith*, 238 N.W.2d 662, 672-73 (N.D. 1976) (emphasis added), *overruled on other grounds by State v. Himmerick*, 499 N.W.2d 568, 571-72 (N.D. 1993).

[¶22] Here, during the sentencing hearing, both the State and Woodman made arguments regarding the appropriate sentence based on the sentencing factors in N.D.C.C. § 12.1-32-04. The district court then discussed many of the sentencing factors, including the serious harm, particularly emotional, caused by Woodman's criminal conduct, that the victims will have to struggle with it for a long time if not for the rest of their lives, and that "it's going to take a lot of work to overcome that"; that an objective person would expect Woodman's criminal conduct to cause serious harm to the victims; Woodman was not provoked, noting "[t]here was no excuse for the conduct"; the victims did not facilitate the commission of the crime; that no restitution can be made for the injury caused to the victims; Woodman's criminal history; whether Woodman's conduct was likely to recur and whether he was likely to commit another crime, including the impact of probation on those factors and whether Woodman recognized what he did and its impact; and that prison would not have an undue hardship on Woodman due to his age or health. The court also considered the victims' statements, character letters, Woodman's wife's statement, and Woodman's statement to the court. While addressing Woodman's criminal history, the court noted the pending charge, stating "it is alarming to the Court that while this matter was pending, this other matter comes forward as well." The court made no further mention of the pending charge.

[¶23] "While we cannot condone a practice of reliance, to any degree, on impermissible factors in the sentencing determination," *Smith*, 238 N.W.2d at 673, Woodman has not demonstrated the district court substantially relied on the pending charge in determining the severity of Woodman's sentence. Thus, the district court's error, if any, does not "justify vacation of the sentence." *Id.*; *cf. Olander*, 1998 ND 50, ¶ 12 ("In analyzing obvious error, our decisions require examination of the entire record and the probable effect of the alleged error in light of all the evidence.").

8

[¶24] We conclude Woodman has not demonstrated the district court committed obvious error by relying on an impermissible factor to decide the severity of the sentence.

VI

[¶25] We affirm the amended criminal judgment.

[¶26] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr